**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| COSURAC CONTRACTORS, LLC<br><br>Plaintiff,<br><br>-vs-<br><br>CORE DEVELOPMENT GROUP, LLC, DEVELOPERS SURETY AND INDEMNITY COMPANY, ABC CORPORATIONS 1-10 and JOHN DOES 1-10,<br><br>Defendants. | Civil Action No. : 7:26-cv-01394<br><br>**AMENDED COMPLAINT**<br><br>***Document Filed Electronically*** |

Plaintiff Cosurac Contractors, LLC ("Cosurac" or "Plaintiff"), by and through its attorneys, Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, P.C., as and for its Amended Complaint against Defendants, Core Development Group, LLC("CDG") and Developers Surety and Indemnity Company ("Surety") (collectively "Defendants") alleges as follows:

**PARTIES**

1. Cosurac is a Pennsylvania limited liability company duly authorized to do business in the State of New York with its principal place of business at 3890 Skippack Pike, Skippack, Pennsylvania 19474.

2. Upon information and belief, CDG is an entity authorized to do business as New Jersey limited liability company with a principal place of business at 860 Wycoff Avenue, Suite 200, Mahwah, New Jersey 07430, and conducts business in Orange County, New York.

3. Upon information and belief, Surety is a California corporation authorized to do business as a surety in the State of New York with a business address at 17771 Cowan, Ste 100, Irvine, California 92614.

4. Defendants, ABC Corporations 1-10 are fictitious names, the real names of which

are unknown, who may claim an interest in the Property.

5. Defendants John Does 1-10 are fictitious names, the real names of which are unknown, who may claim an interest in the Property.

**JURISDICTION AND VENUE**

6. This action was originally commenced in the Supreme Court of the State of New York, County of Orange, with the filing of a Verified Complaint against CDG alleging breach contract and quasi contract claims as well as violation of the New York Prompt Payment Act (the "State Court Action").

7. On December 29, 2026, Plaintiff filed an Amended Verified Complaint adding a claim to foreclose upon a mechanics' lien that was duly filed by Plaintiff with the Orange County Clerk, and to name the owner of the property upon which the lien was filed, A&B Urbanski Farms, LLC, as a party.

8. A&B Urbanski Farms, LLC is a New York limited liability company.

9. On or about February 3, 2026, CDG, as principal, and the Surety, as surety, executed and filed a Release of Lien Bond.

10. Thereafter, by Stipulation filed on February 11, 2026 in the State Court Action, Plaintiff dismissed A&B Urbanski Farms, LLC as a party defendant.

11. This matter was subsequently removed by Defendant, Core Development Group, LLC, to this Court based upon diversity jurisdiction.

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the action is between citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13. Complete diversity exists between Plaintiff and each of the Defendants named

herein.

14. The amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, including but not limited to the unpaid contract balance in the principal amount of $498,433.35, the value of the bond on the lien sought to be foreclosed, plus interest, costs and attorneys' fees.

15. This Court has supplemental jurisdiction over any related state law claims pursuant to 28 U.S.C. § 1367.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this District.

17. Venue is also proper because: (a) the construction project that is the subject of this action is in Orange County, New York; (b)the Property is located in Orange County; and (c) the Surety filed a discharge bond with the Orange County Clerk as set forth below.

18. Orange County, New York, lies within the Southern District of New York.

**FACTUAL ALLEGATIONS**

19. On or about June 13, 2025, Plaintiff and CDG entered into a Master Subcontract Agreement (the "MSA") regarding the construction of a solar panel farm located at 833 Pulaski Highway, Goshen, New York 10924 ("the Project").

20. On or about June 16, 2025, Cosurac and CDG entered into a Work Order Addendum to the MSA whereby Cosurac agreed to perform various construction services, including but not limited to Erosion and Sedimentation Controls, Sitework (adding clean fill), permanent fencing and gates, roads, concrete slabs for solar electrical equipment, landscaping, and restoration, all in accordance with the plans and specifications provided by CDG.

21. Further, the Work Order Addendum revised the agreed contract price to

$1,158,830.00, subject to approved change orders, adjustments, and payments terms set forth in the MSA.

22. Cosurac timely mobilized, staffed, and commenced work in accordance with the MSA and Work Order Addendum.

23. Cosurac performed all of its obligations under the MSA and Work Order Addendum, or was ready, willing, and able to perform, and any alleged nonperformance was caused by CDG and/or parties under CDG's control.

24. Cosurac performed substantial portions of its contracted work, furnished labor, materials, equipment, and services, and incurred costs in reliance on its continued contractual relationship with CDG.

25. On June 16, 2025, Cosurac submitted Payment Application #1 for $91,958.00, the net amount less retainage was $87,360.10. CDG paid this invoice in full on July 8, 2025.

26. On or about July 16, 2025, Cosurac notified CDG that a geotechnical inspector was needed on July 21, 2025 to perform compaction testing before Cosurac could continue with its earthwork activities.

27. On July 21, 2025, all of Cosurac's work was halted as a result of the lack of a geotechnical inspection.

28. Cosurac inquired of CDG as to the status of a geotechnical inspector on site via phone calls, text messages, and emails during the week of July 21, 2025.

29. CDG, through its project manager, advised that it was in the process of scheduling a geotechnical inspector with Standard Solar, so that Cosurac's work could continue.

30. When Cosurac advised CDG that Cosurac would be forced to charge an idle equipment fee of $3,000/day for the delays caused by CDG's inability or failure to provide the

necessary geotechnical inspector, CDG threatened to terminate Cosurac's contract.

31. On July 30, 2025, CDG issued a notice of delay to Cosurac focused on the perimeter fence, even though CDG had not yet approved Submittal #002, submitted June 20, 2025, for chain link fencing.

32. CDG continued to ignore its failure to schedule a geotechnical inspector to allow for Cosurac to proceed with the sitework.

33. As of August 1, 2025, CDG had not scheduled a geotechnical inspection.

34. On August 4, 2025, CDG issued a Notice of Termination of Master Subcontract Agreement to Cosurac wherein CDG stated that Cosurac's "most egregious" failure was not completing the fence by July 8, 2025.

35. Not only was performing the fence work prior to completion of site work contrary to the agreed-upon sequence of work activities, but it was also impossible as Cosurac could not proceed because CDG had not approved Submittal #002 for chain link fencing, which Cosurac had submitted approximately six weeks earlier.

36. While CDG cited the lack of a perimeter fence as "most egregious", upon information and belief, following CDG's termination of Cosurac and the hiring of a replacement contractor to complete Cosurac scope of work, the replacement contractor had not installed the perimeter fence as of November 9, 2025, even after the completion of site work, a clear indication that CDG acknowledged the fence work was not a valid basis to terminate the MSA.

37. According to the Project Schedule in the Work Order, the roads should have been completed before the perimeter fence.

38. Upon information and belief, the project remains behind schedule through no fault of Cosurac.

39. Upon information and belief, as of December 28, 2025, the temporary road had not been removed and restored, while the perimeter fence was less than 50% complete.

40. Upon information and belief, as of December 28, 2025, the topsoil stockpile remains undisturbed since Cosurac's termination, as does the E&S controls that Cosurac installed.

41. CDG's termination was improper, abrupt, without justification, and contrary to the implied covenant of good faith and fair dealing.

42. Even where a termination for convenience clause exists, New York law prohibits a contractor from exercising such termination in bad faith, for an improper purpose, or to avoid its contractual payment obligations.

43. Cosurac submitted invoices and payment applications to CDG in accordance with the MSA terms.

44. Despite Cosurac's performance, CDG failed and refused to pay Plaintiff the agreed-upon amounts, leaving an unpaid contract balance of $291,879.

45. Cosurac made repeated demands for payment, but CDG has failed to remit the amounts due and owing.

46. As a result of CDG's breach, Cosurac has suffered damages, including the unpaid contract balance, termination for convenience fee, interest, and costs incurred in pursuing this action.

47. Following the wrongful termination, CDG asserted that it was owed back charges for purportedly defective work performed by Cosurac. However, CDG never provided any details, backup or justification for the assessment of any back charges, which was required pursuant to the terms of the MSA.

48. Cosurac disputed the purported back charges asserted by CDG and demanded the

contractually required documentation in order to support any assessment of back charges.

49. CDG failed and refused to provide any documentation to support the purported back charges.

50. On October 15, 2025, CDG remitted a partial payment to Cosurac in the amount of $72,619.17.

51. Cosurac accepted the partial payment and continued to dispute the wrongful withholding of additional contract sums owed to Cosurac for work and services performed, and materials delivered to the Project site.

52. On December 22, 2025, in accordance with New York Lien Law § 10, a Notice Under Mechanics Lien Law was duly filed against the Property in the Orange County Clerk's office and recorded as Instrument number 20250080466 in Book 15830, Page 19 ('the Lien").

53. The Lien is in the amount of $275,443.16, representing the balance due and owing to Cosurac.

54. The Lien was filed within the time required by law and complies with all statutory requirements.

55. The Property upon which the Lien was recorded is located at 833 Pulaski Highway, Goshen, New York 10924 and known as Section 24, Block 1, Lot 114. ("the Property")

56. On or about February 3, 2026, CDG, as principal, and the Surety, as surety, executed and filed a Release of Lien Bond (Bond No. 3100199**)** in the sum of $302,987.48 ("the Bond").

57. The Bond was conditioned for the payment of any judgment which may be rendered against the Property for the enforcement of the Lien.

**FIRST CAUSE OF ACTION**
**FORECLOSURE ON MECHANICS LIEN AGAINST BOND**

58. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

59. By reason of the foregoing, Plaintiff had a valid and subsisting lien upon the Property until the filing of the Bond.

60. Upon the filing of the Bond, the Lien was discharged from the Property and attached to the Bond.

61. Plaintiff is entitled to a judgment declaring its Lien to be valid and enforceable, and seeking recovery against the Surety and Principal under the terms of the Bond.

62. Plaintiff is entitled to recover against the Bond.

63. The Surety is jointly and severally liable up to the penal sum of the Bond.

**SECOND CAUSE OF ACTION - BREACH OF CONTRACT**

64. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

65. The MSA and Work Order Addendum constitute valid and enforceable contracts between the parties.

66. Cosurac fully performed its obligations, except to the extent performance was waived, excused, or prevented by CDG.

67. CDG breached the MSA and Work Order Addendum by, among other things:

a. Wrongfully terminating Cosurac;

b. Failing to pay for labor, materials, and services rendered;

c. Withholding retainage without justification and failing to compensate Cosurac for termination related costs owed under the contract.

68. As a direct and proximate result of CDG's breach, Cosurac sustained damages in an amount to be determined at trial, but not less than $498,433.35, plus interest.

**THIRD CAUSE OF ACTION- QUANTUM MERUIT (IN THE ALTERNATIVE)**

69. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

70. Cosurac provided valuable labor, materials, equipment, and services for the Project at CDG's request and for CDG's benefit.

71. CDG accepted and benefited from Cosurac's work.

72. Cosurac expected to be compensated for such work, and CDG knew or should have known that Cosurac reasonably expected payment.

73. It would be inequitable for CDG to retain the benefits of Cosurac's work without fully compensating Cosurac.

74. Cosurac is entitled to recover the reasonable value of its services in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION- ACCOUNT STATED**

75. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

76. Cosurac presented payment applications to CDG reflecting amounts due and owing.

77. CDG accepted the payment applications without objection within the required time.

78. Despite demand, CDG has failed to pay the amounts stated as due.

79. Cosurac is entitled to judgment for the sums stated, plus interest.

**FIFTH CAUSE OF ACTION- BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

80. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

81. CDG's termination of Cosurac was done arbitrarily, in bad faith, and for the improper purpose of securing cheaper replacement labor or avoiding its payment obligations.

82. CDG's conduct deprived Cosurac of the benefits of the bargain it reasonably

expected under the MSA and Work Order Addendum.

83. Cosurac is entitled to damages as a result of CDG's bad faith conduct.

**SIXTH CAUSE OF ACTION- VIOLATION OF NEW YORK PROMPT PAYMENT ACT**

84. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

85. Cosurac and CDG entered into valid and enforceable agreements for the furnishing of labor, materials, equipment, and services related to the Project.

86. Cosurac fully performed all of its contractual obligations, or its performance was excused, and Cosurac properly submitted invoices in accordance with the MSA and the requirements of the New York Prompt Payment Act ("PPA"), N.Y. Gen. Bus. Law §§ 756-758.

87. Pursuant to PPA, CDG was required to approve or reject each properly submitted invoice within 12 business days of receipt and to pay approved invoices within 30 days thereafter.

88. Cosurac submitted Payment Application #2, in the net amount of $29,602.00, on June 23, 2025. CDG did not reject this payment application, as such Payment Application #2 was Deemed approved under the PPA.

89. Cosurac submitted Payment Application #3, in the net amount of $312,304.43 including change order work, on August 1, 2025.

90. CDG did not properly reject Cosurac's Payment Application #3, as such Payment Application #3 was deemed approved under the PPA.

91. CDG's failure to make timely payment constitutes a violation of the PPA and a wrongful withholding of funds.

92. As a direct and proximate result of CDG's statutory violations, Cosurac has suffered damages, including but not limited to the unpaid contract balance, unpaid retainage, and statutory interest.

**WHEREFORE**, Plaintiff, Cosurac Contractors, LLC demands judgment against Defendants, Core Development Group, LLC, Developers Surety and Indemnity Company and John Does 1-10, on the First Cause of Action as follows:

a. Declaring that Plaintiff, by the filing of its Notice of Mechanics Lien, acquired a valid lien against the Property;

b. Awarding judgment against Defendants, jointly and severally, in the sum of $275,443.16, plus interest;

c. Awarding Plaintiff attorneys' fees, costs and disbursements of this action; and

d. Granting such other and further relief as the Court deems just and proper.

Plaintiff further demands judgment against Defendant, Core Development Group, LLC on the Second, Third, Fourth, Fifth, and Sixth Causes of Action as follows:

(a) Damages for breach of contract in an amount to be determined at trial, but not less than $498,433.35;

(b) In the alternative, quantum meruit damages for the reasonable value of labor, materials, equipment, and services furnished;

(c) An account stated for amounts due and owing;

(d) Pre-judgment and post-judgment interest at the statutory rate;

(f) Attorneys' fees, costs and disbursements of this action; and

(g) Such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: New York, New York
March 6, 2026

Respectfully submitted,

JAVERBAUM WURGAFT HICKS
KAHN WIKSTROM & SININS, P.C.

By: */s/ Scott E. Reiser*
SCOTT E. REISER
103 Eisenhower Parkway, Suite 401
Roseland, New Jersey 07068
Tel: (973) 228-6738
Fax: (973) 403-9021
Email: sreiser@lawjw.com

JAVERBAUM WURGAFT HICKS
KAHN WIKSTROM & SININS, P.C.

By: */S Bernadette H. Condon*
BERNADETTE H. CONDON
*Pro Hac Vice Pending*
103 Eisenhower Parkway, Suite 401
Roseland, New Jersey 07068
Tel: (973) 228-6741
Fax: (973) 403-9021
Email: bcondon@lawjw.com

**LOCAL RULE 1.12 CERTIFICATION**

The undersigned certifies and declares that the matter in controversy is not the subject of any other action pending in any other court, or of any pending arbitration or administrative proceeding.

JAVERBAUM WURGAFT HICKS
KAHN WIKSTROM & SININS, P.C.

By: */s/ Scott E. Reiser*
SCOTT E. REISER
103 Eisenhower Parkway, Suite 401
Roseland, New Jersey 07068
Tel: (973) 228-6738
Fax: (973) 403-9021
Email: sreiser@lawjw.com

JAVERBAUM WURGAFT HICKS
KAHN WIKSTROM & SININS, P.C.

By: */S Bernadette H. Condon*
BERNADETTE H. CONDON
*Pro Hac Vice Pending*
103 Eisenhower Parkway, Suite 401
Roseland, New Jersey 07068
Tel: (973) 228-6741
Fax: (973) 403-9021
Email: bcondon@lawjw.com